**NIGRELLI SYSTEMS, INC., Plaintiff,**

v.

**E.I. DUPONT DE NEMOURS AND COMPANY, Defendant.**

No. 98–C–898.

United States District Court, E.D. Wisconsin.

Jan. 13, 1999.

John W. Hein, von Briesen, Purtell & Roper, Milwaukee, WI, for plaintiff.

Stephen E. Kravit, Kravit, Gass, Hovel & Leitner, S.C., Milwaukee, WI, for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This action was originally filed by the plaintiff, Nigrelli Systems, Inc. ["NSI"], in the circuit court for Manitowoc County, on or about July 13, 1998. On September 11, 1998, the defendant removed this action to federal court pursuant to 28 U.S.C. § 1441(a) and (b). In its notice of removal, the defendant asserted that removal was proper because the federal court had diversity jurisdiction insofar as the action is between parties of diverse citizenship and the amount in controversy exceeds $75,000.

Presently before the court is the defendant's motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure. The motion will be granted.

A motion to dismiss under Rule 12(b)(6), will only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Kaplan v. Shure Brothers, Inc.*, 153 F.3d 413, 417 (7th Cir. Aug.11, 1998). For purposes of analyzing a Rule 12(b)(6) motion only, this court is required to accept as true all of the facts alleged in the complaint and to draw all reasonable inferences from them in the plaintiff's favor. *Kaplan*, 153 F.3d at 417; *Gossmeyer v. McDonald*, 128 F.3d 481, 489 (7th Cir.1997).

## I. FACTUAL BACKGROUND

The plaintiff's complaint contains the following allegations. In February 1990, Forma–Pack, Inc. ["Forma–Pack"], which owns the patent for the process for making "Clean Top" six-pack and twelve pack carrier packages for the beverage industry, entered into a development agreement with the plaintiff, NSI. Pursuant to this agreement, NSI was to manufacture highspeed packaging equipment that would affix the "Clean Top" carriers to the beverage cans. (Complaint, ¶¶ 7 and 8.) Forma–Pack and NSI simultaneously entered into a manufacturing agreement to become effective upon Forma–Pack's acceptance of the prototype. (Id.) Forma–Pack ultimately accepted NSI's prototype packaging machine. (Complaint, ¶ 8.) Forma–Pack is not a party to this lawsuit.

In August 1990, E.I. DuPont De Nemours and Company ["DuPont"] and Forma–Pack entered into a joint venture agreement for the development of multipack beverage can carriers in order to exploit Forma–Pack's patent for the "Clean–Top" process. (Complaint, ¶ 5.) DuPont's polymer products department designs and manufactures plastic for use in commercial applications. (Complaint, ¶ 3.) Under the joint venture agreement, Forma–Pack was required to manufacture or procure the highspeed packaging equipment which would affix the carriers to the beverage cans. (Complaint, ¶ 5.) NSI and DuPont did not enter into any contract, nor did NSI purchase plastic from DuPont.

Miller Brewing Company ["Miller"], a manufacturer of beverages which are distributed in six-pack and twelve-pack carrier

packages, committed to purchase and perform a test installation of an NSI manufactured highspeed packaging machine using the Forma–Pack patent and DuPont plastic. (Complaint, ¶ 6.) The packaging machine was built by NSI, and the test installation utilized raw materials provided by DuPont. The packaging machine which was installed at the Miller test site in Albany, Georgia, "was designed to run plastic formulated and die cut to specifications." (Complaint, ¶ 11.) The test installation was performed during the period from September 1991 through June 1992. (Complaint, ¶ 12.) During this period, rolls of plastic which were intended for use in the test installation were shipped by DuPont to the test site. (Id.)

Unknown to Forma–Pack, NSI or Miller, the person within the DuPont organization who was responsible for selecting the contractor to perform the die cutting—Plitek, Inc.—had no experience in the die cutting of plastic or in contract management. (Complaint, ¶ 13.) In addition, DuPont knew that Plitek's die-cutting of the plastic which was to be shipped to the test installation site did not conform to specifications, but still permitted the faulty plastic to be shipped to the site. (Complaint, ¶¶ 14 and 15.) Forma–Pack, NSI and Miller were unaware of the defective condition of the DuPont plastic. (Complaint, ¶ 15.)

In adapting the packaging machine to production line conditions in the test installation, NSI relied on the implied representations that the plastic supplied by DuPont conformed to specifications. (Complaint, ¶ 17.) DuPont did not disclose the fact that the plastic it supplied to the test installation site frequently did not conform to specifications and concealed this information from Forma–Pack, NSI and Miller. (Complaint, ¶ 19.) Had NSI known that the plastic did not meet specifications it would have been able to make adjustments to the packaging machine to enable it "to consistently package product in production line conditions." (Complaint, ¶ 20.)

Although the packaging machine completed its test installation at the Miller plant, Miller decided to cancel the "Clean Top" carrier project. According to the plaintiff, Miller's decision to cancel the project was based on the errors and misrepresentations made by DuPont.

Accordingly, NSI commenced the instant action against DuPont alleging negligence, negligent misrepresentation by omission, strict responsibility for misrepresentation and intentional misrepresentation (common law fraud and deceit).

## II. DuPONT'S MOTION TO DISMISS

■ DuPont seeks dismissal of the complaint on the ground that NSI's claims are barred by Wisconsin's economic loss doctrine. Under the economic loss doctrine, "a commercial purchaser of a product cannot recover from a manufacturer, under the tort theories of negligence or strict products liability, damages that are solely 'economic' in nature." *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis.2d 395, 399, 573 N.W.2d 842, 844–45 (1998). That holding was made by the Wisconsin supreme court in response to a certified question from the court of appeals for the seventh circuit.

■ In general, economic loss is defined to include damages incurred because a product is inferior and fails to work for the general purposes for which it was manufactured and sold. *Id.* Economic loss consists of loss in the value of the product itself as well as consequential monetary loss attributable to the product defect such as lost profits. *Id.* The economic loss doctrine "does not bar a commercial purchaser's claims based on personal injury or damage to property other than the product, or economic loss claims that are alleged in combination with noneconomic losses." *Id.* at 401, 573 N.W.2d 842.

The Wisconsin supreme court has not directly addressed whether the economic loss doctrine also prohibits a plaintiff from recovering economic damages under theories of misrepresentation or fraud. However, the court of appeals for the seventh circuit has held that Wisconsin courts would not allow allegations of misrepresentations or fraud to remove the action from the economic loss doctrine where, as in the instant case, the alleged misrepresentations or fraudulent statements relate to the quality of the goods in question. *See Cooper Power Systems v.*

*Union Carbide Chemicals & Plastics Co. Inc.*, 123 F.3d 675, 682 (7th Cir.1997); *Badger Pharmacal, Inc. v. Colgate–Palmolive Co.*, 1 F.3d 621, 628 (7th Cir.1993).

In explaining the rationale of the economic loss doctrine, the Wisconsin supreme court has recently explained that "[a]pplication of the economic loss doctrine to tort actions between commercial parties is generally based on three policies":

> (1) to maintain the fundamental distinction between tort law and contract law; (2) to protect commercial parties' freedom to allocate economic risk by contract; and (3) to encourage the party best situated to assess the risk [of] economic loss, the commercial purchaser, to assume allocate, or insure against that risk.

*Daanen*, 216 Wis.2d at 402, 573 N.W.2d 842. None of these three policies is affected by the presence or absence of privity between the parties. *Id.*

NSI does not dispute that the damages it seeks—loss of profits from the sales of future packaging machines to Forma–Pack due to the cancellation of the Miller test project—are limited to economic damages as a result of DuPont's allegedly tortious conduct. However, the plaintiff argues that the economic loss doctrine does not bar its claims because the doctrine only applies to "commercial purchasers" and it did not purchase goods from DuPont or from Forma–Pack. In addition, NSI contends that the economic loss doctrine is inapplicable because NSI could not have contracted for a warranty that would have protected its failed economic expectations and because DuPont owed NSI a duty of care to refrain from acts that may foreseeably cause economic harm.

█ In my opinion, the limitations sought to be imposed on the economic loss doctrine by the plaintiff are not supported by existing case law or the policies upon which the economic loss doctrine is based. The plaintiff has not cited any case law which holds that only commercial purchasers with a contractual remedy are subject to the economic loss doctrine. Indeed, the Wisconsin supreme court has rejected the argument advanced by the plaintiff that the economic loss doctrine should not apply where the plaintiff has no available contractual remedy. *Daanen*, 216

Wis.2d at 413, 573 N.W.2d 842 ("We refuse to adopt [the 'no alternative remedy'] exception to the economic loss doctrine."). Further, federal courts interpreting Wisconsin's economic loss doctrine have not imposed the limitations urged by NSI but, instead have defined the doctrine broadly. *See Miller v. U.S. Steel Corp.*, 902 F.2d 573, 574 (7th Cir. 1990) (economic loss doctrine holds that "tort law provides no remedy in a case in which the plaintiff is seeking to recover for a commercial loss rather than damage to person, property, or reputation."); *Maryland Staffing Services, Inc. v. Manpower, Inc.*, 936 F.Supp. 1494, 1509 (E.D.Wis.1996) (the economic loss doctrine "prohibits a plaintiff from using tort law to recover for a commercial loss."). In addition, the court of appeals for the seventh circuit has applied it where the plaintiff is not a commercial purchaser. *See Badger*, 1 F.3d 621 (commercial loss claims of the plaintiff, the inventor of a household cleaning product who entered into a marketing agreement with the defendant, were barred by the economic loss doctrine).

More importantly, the three policies underlying the economic loss doctrine as enunciated by the court in *Daanen*, support application of the economic loss doctrine to NSI's claims. The Wisconsin supreme court explained that the application of the economic loss doctrine is justified to maintain the distinct functions of tort and contract law. *Daanen*, 216 Wis.2d at 404, 573 N.W.2d 842. The court explained that tort law is "rooted in the concept of protecting society as a whole from physical harm to person or property" whereas contract law is designed to "effectuate exchanges and to protect the expectancy interests of parties to private bargained-for agreements." *Id.* at 403, 404, 573 N.W.2d 842. As a result, where only economic loss is caused to a commercial party, the policy arguments for imposing tort liability are considerably diminished. *Id.* at 404, 573 N.W.2d 842.

According to the complaint, NSI's damages are the loss of future sales of packaging machines as a result of the defective plastic provided by DuPont to Forma–Pack. NSI does not allege that the defective plastic harmed individuals or other property. Such

commercial damages, like the damages for repair costs and lost revenue due to defective equipment in *Daanen*, do not implicate any tort law concerns regarding unreasonably dangerous products or public safety. Rather, they involve contract law concerns of failed economic expectations.

This policy interest is not dependent on the plaintiff's status as a purchaser. The fact that NSI did not purchase the defective plastic from DuPont does not alter the fact that the damages it seeks are purely economic in nature. Thus, I find that this policy weighs in favor of application of the economic loss doctrine in the instant case.

The second public policy underlying the economic loss doctrine is to protect commercial parties' freedom to contract. The fundamental principle underlying this policy is the premise that commercial parties should be able to allocate risk through contract. The plaintiff argues that this policy is not advanced by barring the tort claims of a non-purchaser which never had the opportunity to allocate risk by contract.

The problem with the plaintiff's argument is that it *did* have the opportunity to allocate its risk by contract. NSI could have protected its expectation of selling additional packaging machines when it entered into the agreement with Forma–Pack. Specifically, when NSI entered into the development agreement with Forma–Pack, NSI could have contracted for the sale of additional machines at that time, or it could have demanded that the sale of future machines would not be canceled due to Forma–Pack's failure to obtain plastic that would work with the packaging machines. Obviously, NSI chose not to or failed to allocate its risk of economic loss in this manner. Hence, to allow NSI to hold a remote man ufacturer—DuPont—liable under tort theories for frustrated economic expectations would allow NSI to recoup benefits that were not part of the bargain it struck with Forma–Pack. *Id.* at 406–407, 573 N.W.2d 842. Furthermore, to do so would also impose liability on DuPont which it did not bargain for when it contracted with Forma–Pack. This is precisely the type of intrusion into risk allocation that is behind the economic loss doctrine. In my opinion, the second policy of the economic loss doctrine also weighs in favor of applying the economic loss doctrine in the present case.

The Wisconsin supreme court has stated that application of the economic loss doctrine "encourages the party with the best attendant risks of economic loss, the commercial purchaser, to assume, allocate, or insure against the risk of loss caused by a defective product." *Id.* at 409, 573 N.W.2d 842. In explaining this policy, the Wisconsin high court stated that "the economic loss doctrine is aimed at encouraging commercial *parties* to negotiate ex ante to negotiate for warranty protection or to take other steps, such as purchasing insurance, to protect their purely economic interests." *Id.* at 412, 573 N.W.2d 842 (emphasis added).

NSI contends that the Wisconsin supreme court's use of the phrase "commercial purchaser" in *Daanen* demonstrates the court's intent to limit application of the economic loss doctrine to circumstances where the party bringing the claim has had the opportunity to allocate risk by contract. This argument is of no moment, however, because I have already concluded that NSI did have the opportunity to allocate its risk by contract.

Because NSI had the opportunity to allocate its risk through contract or insurance, the policies underlying the economic loss doctrine apply with full force to its claims regardless whether NSI was a purchaser or in privity with DuPont. *See id.* at 412, 573 N.W.2d 842. In my opinion, NSI has not succeeded in demonstrating that the three policies identified in *Daanen* do not support application of the economic loss doctrine to its case.

In addition, I find that the plaintiff's argument that its negligence claims are exempt from the economic loss doctrine because DuPont owed it a duty of care is without merit. Such contention overlooks the Wisconsin supreme court's holding in *Daanen*, that "the general duty of care to refrain from acts unreasonably threatening physical harm is not paralleled by any comparable duty when the harm threatened is merely economic." *Daanen*, 216 Wis.2d at 405, 573 N.W.2d 842. The court also found that the lack of privity does not alter this conclusion. *Id.*

NSI's assertion that DuPont owed NSI a duty of care as a fellow joint venturer also lacks cogency because DuPont and NSI were not fellow joint venturers. NSI's own allegations establish that no joint venture agreement existed between NSI and DuPont. As correctly noted by the defendant, under Wisconsin law a joint venture is only created by contract. *Mortgage Associates, Inc. v. Monona Shores, Inc.*, 47 Wis.2d 171, 183, 177 N.W.2d 340, 348 (1970).

In sum, a review of the policies underlying the economic loss doctrine and the application of those policies to the facts of this case persuades me that Wisconsin's economic loss doctrine precludes the plaintiff from recovering in tort from DuPont for its claimed economic losses. This conclusion applies equally to the plaintiff's negligence and strict liability claims as well as its misrepresentation and fraud claims. *See Cooper*, 123 F.3d at 682; *Badger*, 1 F.3d at 628.

Accordingly, the defendant's motion to dismiss the plaintiff's complaint under Rule 12(b)(6) will be granted. Because the plaintiff's action cannot be saved by amendment of the complaint, the plaintiff's action will also be dismissed, with prejudice. *See Benjamin v. United States*, 833 F.2d 669, 672 (7th Cir.1987).

Therefore, IT IS ORDERED that the defendant's motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, be and hereby is granted.

IT IS ALSO ORDERED that this action be and hereby is dismissed, with prejudice and with costs.