In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1262

RICH PRODUCTS CORPORATION,

Plaintiff-Appellant,

v.

KEMUTEC INCORPORATED,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 95-CV-968--Rudolph T. Randa, Judge.

Argued September 28, 2000--Decided March 2, 2001

Before FLAUM, Chief Judge, BAUER, and HARLINGTON WOOD,
JR., Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.  This is a
diversity suit filed in 1994 by plaintiff, Rich
Products Corporation ("RPC"), a Delaware
corporation, with its principal place of business
in New York, against defendant Kemutec, Inc.
("Kemutec"), a Pennsylvania corporation, joined
with Zurich Insurance Company, Kemutec's insurer.
In 1995, the case was transferred from the
Western District of New York to the Eastern
District of Wisconsin where RPC has a food
manufacturing plant.

  RPC seeks to recover damages from Kemutec which
sold a conveyor to be used to move food
components in RPC's manufacture of food products.
It is alleged that the conveyor was defective
because steel wire strands from the conveyor
cable shredded off and contaminated RPC's food
products. On two occasions in 1994, RPC plant
employees allegedly discovered a total of twenty-
nine (29) pieces of wire, while others were found
by customers in RPC's food products, but no
personal injuries are alleged. As a precautionary
measure, RPC recalled all its food products for
the prior eleven months beginning from the time
the conveyor was first installed. RPC claims
damages of $7.2 million in expenses in connection
with the recall, and a loss of $4.2 million in

profits for a total of $11.4 million damages. RPC does not seek, however, to recover losses for any damage to the conveyor itself, for its non-performance, or for losses due to insufficient throughput/1 or downtime.

Kemutec is a distributor of materials handling equipment under an agreement with an English company that is no longer a party to this suit. RPC alleges that the conveyor had a history of fractured wire cables of which Kemutec was aware, but RPC was not. Kemutec allegedly did not reveal these difficulties to RPC, but instead misrepresented that the conveyor had an excellent record handling baking materials. RPC accepted a quotation from Kemutec in a 1993 purchase order and the conveyer was soon shipped to RPC and installed.

This brief summary of the facts sets the stage for consideration of the applicability of the Wisconsin Economic Loss Doctrine, the major issue in this case./2 The district court on cross motions for summary judgment partially decided the case, granting in part and denying in part each of the cross motions. Thereafter, RPC moved to enter final judgment pursuant to Fed. R. Civ. P. 54(b). That motion was allowed and the court certified that "no good reason exists for delaying judgment against the plaintiff on its tort claims." The court then dismissed RPC's tort claims. That left only RPC's breach of express and implied warranties claims in the district court. This court accepted the appeal.

RPC explains that Kemutec only has insurance coverage for the tort claims. Kemutec's insurer disclaimed coverage on the warranty claims, and RPC maintains that Kemutec has insufficient assets to satisfy any residuary judgment. Not unmindful of RPC's bleak recovery outlook, we find the judgment of the district court to be well-considered, and must be affirmed, as we discuss below. The warranty claims remaining in the district court are not involved in this appeal.

I.  DISCUSSION

In this case where there is friction between tort and contract law, we must apply the Wisconsin Economic Loss Doctrine. In response to a certified question of law from this court in 1998, the Wisconsin Supreme Court gave a thorough and detailed explanation of the doctrine in Daanen & Janssen, Inc. v. Cedarapids, Inc., 573 N.W.2d 842 (Wis. 1998), which controls the case at issue. The economic loss doctrine is a judicially created doctrine, id. at 844, the

application of which is "to maintain the distinct functions of tort and contract law." Id. at 846. The doctrine provides:

[A] commercial purchaser of a product cannot recover from a manufacturer, under the tort theories of negligence or strict products liability, damages that are solely "economic" in nature. As other courts have recognized, defining "economic loss" is difficult. Economic loss is generally defined as damages resulting from inadequate value because the product is inferior and does not work for the general purposes for which it was manufactured and sold. It includes both direct economic loss and consequential economic loss. The former is loss in value of the product itself; the latter is all other economic losses attributable to the product defect.

* * * *

Direct economic loss may be said to encompass damage based on insufficient product value; thus, direct economic loss may be "out of pocket"--the difference in value between what is given and received--or "loss of bargain"--the difference between the value of what is received and its value as represented. . . . Consequential economic loss includes all indirect loss, such as loss of profits resulting from inability to make use of the defective product.

* * * *

The economic loss doctrine, however, does not bar a commercial purchaser's claims based on personal injury or damage to property other than the product, or economic loss claims that are alleged in combination with noneconomic losses. In short, economic loss is damage to a product itself or monetary loss caused by the defective product, which does not cause personal injury or damage to other property.

Id. at 844-45 (citations omitted).

The Wisconsin Economic Loss Doctrine is applied to tort actions between commercial parties based on three policies:

(1) to maintain the fundamental distinction between tort law and contract law; (2) to protect commercial parties' freedom to allocate economic risk by contract; and (3) to encourage the party best situated to assess the risk (sic) economic loss, the commercial purchaser, to assume, allocate, or insure against that risk.

Daanen & Janssen, 573 N.W.2d at 846. The court considered both the contract law and tort law

aspects of the doctrine.

From its inception the economic loss doctrine has been based on an understanding that contract law and the law of warranty, in particular, is better suited than tort law for dealing with purely economic loss in the commercial arena. . . . Contract law rests on obligations imposed by bargain. The law of contracts is designed to effectuate exchanges and to protect the expectancy interests of parties to private bargained-for agreements. Contract law, therefore, seeks to hold commercial parties to their promises, ensuring that each party receives the benefit of their bargain. Accordingly, the individual limited duties implicated by the law of contracts arise from the terms of the agreement between the particular parties.

* * * *

The law of torts, on the other hand, rests on obligations imposed by law. Tort law is rooted in the concept of protecting society as a whole from physical harm to person or property. Products liability and negligence law, in particular, developed to protect consumers from unreasonably dangerous goods that cause personal injury and damage to other property. It is society's interest in human life, health, and safety that demands protection against defective products, and imposes a duty upon manufacturers of those products.

* * * *

By definition economic loss excludes claims for personal injury and damage to other property. Recovery of economic loss is intended solely to protect purchasers from losses suffered because a product failed in its intended use. As a result, the general duty of care to refrain from acts unreasonably threatening physical harm is not paralleled by any comparable duty when the harm threatened is merely economic. A manufacturer in a commercial relationship has no duty under either negligence or strict liability theories to prevent a product from injuring itself. The duty to provide a product which functions to certain specifications is contractual. Contract law, therefore, is better suited for enforcing duties in the commercial arena because it permits the parties to specify the terms of their bargain and to protect themselves from commercial risk.

Id. at 846-47 (internal quotations and citations omitted).

   In the present case, RPC is seeking "to recover

in tort what are essentially contract damages." Daanen & Janssen, 573 N.W.2d at 847. RPC attempts to do that by selective pleading to avoid the Wisconsin Economic Loss Doctrine, but even skillful pleading does not transform the damages sought into tort claims to make up for what hindsight shows was the lack of a sufficient sales contract to protect RPC. Tort law does not provide a remedy in cases where the commercial parties "are free to allocate the risk of economic loss by disclaiming or limiting their respective liabilities by contract." See id. at 847-48 (citation omitted). RPC failed to do that, although the record shows that RPC had experienced trouble with its prior food conveyor (although not a belt system) and was seeking a remedy with a new and reliable conveyor for its food products business. Why RPC did not seek contract and warranty protection with its new system does not appear. If it had, this lawsuit might have been avoided. That RPC chose instead to rely on Kemutec's advertising and self-serving promotions does not change this action from contract to tort. In a commercial relationship, liability is determined by contract. RPC should have sought performance guarantees from Kemutec or gone elsewhere for equipment with warranties. RPC knew what could or might happen, and it did. See id. at 849 ("[Daanen] could have anticipated production problems caused by equipment failures and guarded against such failures by purchasing insurance or through allocating these risks by contract."). A protective contract may or may not justify the increased cost, but without such a contract there remains the risk that RPC chose to take. These commercial parties had complete freedom to contract. We cannot do for RPC what it did not do. See id. ("We see no reason to intrude into the parties' allocations of risk of economic loss and to extricate the parties from their bargains.").

We have used the words of the Wisconsin Supreme Court as found in the various quotes above rather than try to paraphrase the holding. The Wisconsin Supreme Court chose its words carefully in explaining its Economic Loss Doctrine and this court is not at liberty to disregard that comprehensive opinion.

As it turns out, RPC's recall of its products and its other precautionary actions no doubt saved RPC's reputation as a reliable and trustworthy food manufacturer even though it must lose this tort dispute. The other arguments of RPC are without merit.

The judgment of the district court is affirmed, leaving RPC's warranty claims to be resolved by that court.

AFFIRMED.

/1 Throughput is defined as "an amount of raw material put through processing or finishing operations in a specific time." Webster's Third New International Dictionary 2385 (1981).

/2 Other pertinent facts will be mentioned where needed, but for a comprehensive review of all the facts and issues, see Rich Products Corp. v. Kemutec, Inc., 66 F.Supp. 2d 937 (E.D. Wis. 1999).