PER CURIAM.
Amsoil, Inc., a manufacturer and distri-buter of synthetic oil, was sued for negligence and breach of warranty in the Eastern District of Arkansas by Allen Engineering Corporation. Allen used Amsoil’s synthetic oil as a lubricant in gear boxes it produced. Allen claimed the synthetic oil caused property damage to the gear boxes, resulting in financial harm incurred by Allen when it replaced the defective gear boxes, recalled all gear boxes with Amsoil oil and replaced the oil, and as a result, lost profits and market share. The two parties settled: Amsoil agreed to pay Allen $1.5 million.
Amsoil then sought indemnity under its comprehensive general liability (CGL) insurance policies with Insurance Company of North America, Scottsdale Insurance Company, and St. Paul Fire and Marine Insurance. All parties moved for summary judgment. The district court * con- *604 eluded the insurance companies should reimburse $169,095.86 of the settlement as direct, covered product damages, but not the balance of the $1.5 million settlement ($1,330,904.14) which resulted from consequential economic losses not covered by the CGL policies.
Amsoil appeals, arguing the insurance companies should cover the entire settlement because the whole settlement paid for qualifying property damage. The insurance companies cross-appeal, contending they should not be required to indemnify Amsoil for any of the $1.5 million settlement because none of the expenses covered by the settlement were for property damage, so the entire settlement was precluded from insurance coverage under Wisconsin law. Having considered the parties’ claims in this diversity case and reviewed the grant of summary judgment de novo, we affirm the judgment of the district court. Wal-Mart Stores, Inc. v. RLI Ins. Co., 292 F.3d 583, 586 (8th Cir. 2002) (standard of review).
First, we review the choice of law. We agree with the district court that although Allen’s initial tort claims were brought in Arkansas, Wisconsin contract law governs the current dispute between Amsoil and its insurers. The parties reside and do business in Wisconsin and much of the insurance contract negotiations took place in Wisconsin. Fuller v. Hartford Life Ins. Co., 281 F.3d 704, 707 (8th Cir.2002) (Arkansas courts apply the “most significant relationship” test to resolve a choice of law dilemma). Further, claims seeking to enforce insurance policies fall under contract law, not tort law. Wis. Label v. Northbrook Prop. & Cas. Ins. Co., 233 Wis.2d 314, 607 N.W.2d 276, 282 (Wis.2000) (“Insurance policies are contracts and are governed by the same rules that govern interpretation of contracts in general.”).
Second, having decided Wisconsin contract law governs this case, we evaluate the district court’s application of that law. Under Wisconsin law, “CGL policies] protect!] the insured against liability for [property] damages the insured’s negligence causes to third parties.... [But they] do not provide coverage for the insured’s liability for repairing or replacing the insured’s defective work.... ” Id. at 283-84. Specifically, “[coverage under a CGL policy does not extend to ‘business risks’-risks relating to the repair or replacement of the insured’s faulty work or products, or defects in the insured’s work or product itself.” Vogel v. Russo, 236 Wis.2d 504, 613 N.W.2d 177, 182 (Wis.2000). Additionally, economic loss which is not “property damage” is not covered under a CGL policy. Wausau Tile v. County Concrete Corp., 226 Wis.2d 235, 593 N.W.2d 445, 460 (Wis.1999). If an insured’s “claim for repair and replacement costs is that the [final products] were damaged because one or more of their ingredients was of insufficient quality and did not work for [the insured’s] intended purpose!,][t]his is the essence of a claim for economic loss.” Id. at 454.
We agree with the district court that the “damages because of property damages” clause contained in Amsoil’s CGL insurance contracts does not obligate the insurers to cover costs beyond the $169,095.86 cost incurred in repairing and replacing the 48 riding trowels to which the Amsoil synthetic oil caused actual physical harm. Allen’s publicity of a recall of products using Amsoil synthetic oil and the replacement of the oil in all recalled items account for $175,030.00 of the settlement. According to the settlement agreement, $1,155,874.14 (the remainder of the settlement) “is allocated to the consequential damages suffered by Allen .... [specifically,] the lost production, sales, profits, *605 and market share that flowed from the damaged machines, i.e., the diminution in value of Allen’s business caused by the damaged machines.”
The dissent takes the position that Amsoil should be indemnified for at least part of the $1,155,874.14 in consequential damages it paid Allen. To reach this conclusion, however, the dissent relies heavily on a tort case involving a products liability claim, Daanen & Janssen, Inc. v. Cedarapids, Inc., 216 Wis.2d 395, 573 N.W.2d 842 (Wis.1998), rather than on a case involving a CGL policy. As we have explained earlier, under Wisconsin contract law, the portions of the settlement that pay for Allen’s product recall and for its lost profits and market share are economic losses and business risks not insured under Amsoil’s CGL policies. Thus, we conclude Amsoil is not eligible to be reimbursed for these portions of its settlement.
Third, we turn to the insurance companies’ cross-appeals. The insurance companies contend they should not be obligated to indemnify Amsoil at all because the $169,095.86 portion of the settlement which the district court concluded was for qualifying property damage is instead for economic loss. We disagree. According to the settlement agreement, this portion of the settlement “is allocated to the cost of repairing or replacing the approximately 48 riding trowels that sustained physical damage as a result of the use of Amsoil’s” synthetic oil. Because these costs are “damages caused by property damages,” they are not exempt economic losses and must be reimbursed by Amsoil’s insurers under the CGL insurance policies.
For the reasons stated above, we affirm the decision of the district court.

The Honorable William R. Wilson, United States District Judge for the Eastern District of Arkansas.