Shannon BELOW, Plaintiff-Appellant-Petitioner,

v.

Dion R. NORTON and Dana Norton,
Defendants-Respondents.

Supreme Court

*No. 2005AP2855. Oral argument February 26, 2008.
—Decided July 1, 2008.*

2008 WI 77

(Also reported in 751 N.W.2d 351.)

For the plaintiff-appellant-petitioner there were briefs filed by *Daniel W. Stevens, Rudolph J. Kuss,* and the *Law Office of Daniel W. Stevens,* Brookfield, and oral argument by *Rudolph J. Kuss.*

For the defendants-respondents there were briefs filed by *Vicki Zick* and *Zick & Weber Law Offices, LLP,* Johnson Creek, and oral argument by *Vicki Zick.*

Amicus curiae briefs were filed by *Debra P. Conrad,* Madison, on behalf of the Wisconsin REALTORS® Association.

An amicus curiae brief was filed by *Stephen E. Meili,* Madison; *Mary C. Fons* and *Fons Law Office,* Stoughton; *Deborah Zuckerman* and *Michael Schuster,* Washington D.C.; *De Vonna Joy,* Big Bend; *Jeffrey R. Myer,* Milwaukee; and *Peter M. Koneazny,* Milwaukee, on behalf of the University of Wisconsin Consumer Law Litigation Clinic, AARP, Consumer Justice Law Center LLC, Legal Action of Wisconsin, and the Legal Aid Society of Milwaukee Inc.

An amicus curiae brief was filed by *Charles David Schmidt* and *Cannon & Dunphy, S.C.,* Brookfield, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. N. PATRICK CROOKS, J. This is a review of a published decision of the Court of Appeals,[1] which

---

[1] *Below v. Norton,* 2007 WI App 9, 297 Wis. 2d 781, 728 N.W.2d 156.

reversed in part, affirmed in part, and remanded the decision of the Circuit Court for Milwaukee County, Judge Michael D. Guolee.

¶ 2. Petitioner, Shannon Below (Below), seeks review of the court of appeals' decision. The circuit court had granted the motion to dismiss of the respondents, Dion R. Norton and Dana Norton (the Nortons).

¶ 3. There are two principal issues upon review. The first issue is whether the economic loss doctrine (ELD) bars common-law claims for intentional misrepresentation[2] that occur in the context of residential real estate transactions. The second issue is whether the ELD bars common-law claims for intentional misrepresentation that occur in the context of noncommercial real estate transactions.

¶ 4. We affirm the decision of the court of appeals. We hold that the ELD bars common-law claims for intentional misrepresentation in real estate transactions, whether such claims occur in the context of residential[3] or noncommercial sales, such as the one in the case before us. We do not draw a distinction between the terms "residential" and "noncommercial" here, because either term fits the real estate transaction at issue.

---

[2] Below's common-law negligent misrepresentation and strict responsibility misrepresentation claims are not addressed herein, because Below conceded in her petition for review that the ELD barred those claims. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.,* 225 Wis. 2d 305, 592 N.W.2d 201 (1999).

[3] The court of appeals characterized the transaction here as a *"residential* real estate transaction." *Below,* 297 Wis. 2d 781, ¶ 17. The petition for review and the parties' briefs present separate issues concerning noncommercial and residential real estate transactions in relation to the ELD and a common-law claim for intentional misrepresentation.

¶ 5. Below is not left without a remedy. A pur-
chaser of a home, as well as real estate brokers and
agents, can all be assured that applying the ELD still
leaves statutory and contractual remedies available
where misrepresentation has occurred. We note that
Below's claim under Wis. Stat. § 100.18 (2003–04)[4] for
false advertising was remanded by the court of appeals
to the circuit court for a trial on its merits. The court of
appeals' decision on that issue was not presented for our
review. Section 100.18 provides a remedy for more than
merely "false advertising," in that it covers fraudulent
representations made to even one prospective pur-
chaser. *See K&S Tool & Die Corp. v. Perfection Mach.
Sales, Inc.,* 2007 WI 70, ¶¶ 21, 23, 301 Wis. 2d 109, 732
N.W.2d 792.

¶ 6. In our *K&S Tool & Die Corporation* opinion,
we stated that the legislature intended Wis. Stat.
§ 100.18 " 'to protect the residents of Wisconsin from any
untrue, deceptive or misleading representations . . . .' "
*Id.,* ¶ 21 (citation omitted). Furthermore, we reiterated
that a statement that was made to only one individual
could qualify for the protections afforded by § 100.18. *Id.*
Clearly, a purchaser of residential or noncommercial real
estate, such as Below, is protected by § 100.18 from the
false representations of a home seller. If Below proves
that claim, she shall recover her "pecuniary loss, together
with costs, including reasonable attorney fees . . . ." *See*
Wis. Stat. § 100.18(11)(b)2.

¶ 7. We note that the issue of whether the ELD
bars claims under Wis. Stat. § 895.446[5] (formerly Wis.

---

[4] All further references to the Wisconsin Statutes are to the
2003–04 version unless otherwise noted.

[5] Wisconsin Stat. § 895.80 has been renumbered as Wis.
Stat. § 895.446, but the statute's text was not changed in any
way that was material to this opinion (there were insignificant

Stat. § 895.80) for a violation of Wis. Stat. § 943.20(1)(d) also was presented for our review. However, we decline to address that issue in this opinion, and we remand that issue to the circuit court. We do so because the record of the proceedings before the circuit court is unclear as to why this claim was dismissed. Furthermore, this issue was not directly addressed and discussed by the court of appeals. We cannot determine from the record before us on review whether the circuit court dismissed that claim: (1) because it was insufficient and fatally flawed, so that a claim upon which relief could be granted was not stated; or (2) because the circuit court believed that claim was barred by the ELD. As a result, we remand that issue to the circuit court for further proceedings. Upon remand, the circuit court should clearly state that court's holding on that statutory claim. The circuit court should review this court's recent decision in *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 22, ¶ 33, 308 Wis. 2d 103, 746 N.W.2d 762. That case addressed the issue of whether the statutory claim involved therein was barred by the ELD. In that case, we stated, "We are satisfied that the ELD cannot apply to statutory claims . . . ." *Id.*

I

¶ 8. This case involves a real estate transaction in which Below purchased a house on the south side of Milwaukee, Wisconsin from the Nortons in February of 2004. Because Below's claims were dismissed when the circuit court granted the Nortons' motion to dismiss, the relevant facts are brief and undisputed.

¶ 9. The Nortons completed the statutorily required property condition report when they put their

changes to the statute's title and also to § 895.446(4)). This opinion will refer to the renumbered § 895.446.

house on the market. In their property condition report, the Nortons represented that they were not aware of any defects with the house's plumbing system, except for a problem with their bathtub's drain handle.

¶ 10. Below reached an agreement with the Nortons to purchase the house, and the transaction closed. Below and the Nortons did not have any personal contact during this process. After Below moved into the house, she learned that the sewer line that ran between the house and the street was broken.

¶ 11. On May 4, 2004, Below filed the present action against the Nortons in the Circuit Court for Milwaukee County. In Below's complaint, she alleged claims for: (1) intentional misrepresentation; (2) strict responsibility misrepresentation; (3) negligent misrepresentation; (4) misrepresentation in violation of Wis. Stat. § 100.18; and (5) misrepresentation in violation of Wis. Stat. §§ 895.446 and 943.20(1)(d).[6] Below's complaint alleged that the Nortons knew of the defect with the sewer line before the house's sale, and misrepresented their knowledge to induce Below to purchase the house. Below alleges that she relied on this misrepresentation when purchasing the house and that this defect, which was not disclosed in the property condition report, caused her to suffer a pecuniary loss.

¶ 12. Below requested, and was granted, leave to file an amended complaint, which contained a breach of contract claim. However, both the circuit court and the court of appeals did not consider the amended complaint because they determined that Below did not

---

[6] Below also alleged a sixth claim for rescission and restitution. As the circuit court and the court of appeals both correctly noted, neither constitutes a claim. Rather, both are remedies. Accordingly, we will not specifically address rescission or restitution.

properly file and serve her amended complaint. Below did not appeal the court of appeals' determination on that issue to this court. We note that the circuit court, on remand, has the authority to allow Below to attempt again to file and serve an amended complaint that contains her breach of contract claim. See Wis. Stat. § 802.09(1). The determination on whether to allow such an amendment is left to the discretion of the circuit court. *Id.*

¶ 13. On June 11, 2004, the Nortons filed both an answer to Below's complaint and a motion to dismiss her complaint on the grounds that the complaint failed to state a claim upon which relief could be granted and that some of Below's claims were barred by the ELD. In their accompanying memorandum in support of their motion to dismiss, the Nortons argued that Below's common-law intentional, negligent, and strict responsibility misrepresentation claims were barred by the ELD.[7] On September 13, 2004, the circuit court adjourned its hearing on the Nortons' motion to dismiss Below's complaint until this court rendered its decision in *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111, 283 Wis. 2d 555, 699 N.W.2d 205.

¶ 14. The circuit court held hearings on the Nortons' motion to dismiss Below's complaint on July 26, 2004, September 13, 2004, and October 17, 2005. On November 4, 2005, the circuit court formally granted the Nortons' motion to dismiss the complaint in its entirety. The circuit court held that the ELD barred Below's common-law intentional, negligent, and strict

---

[7] As previously noted, Below's common-law negligent misrepresentation claim and her common-law strict responsibility misrepresentation claim are not addressed herein, because Below conceded in her petition for review that the ELD barred those claims.

responsibility misrepresentation claims. The circuit court also dismissed Below's remaining claims, such as the Wis. Stat. §§ 100.18 and 895.446 claims, in one paragraph in the transcript as not being "applicable." The circuit court also stated, "I am going to dismiss these claims based on this transaction and this Complaint[,] and . . . these are not claims that [Below] can claim under these facts . . . ."

¶ 15. Below appealed the circuit court's decision to the court of appeals. Below argued that the circuit court had erred when it held that all of her tort claims were barred by the ELD. Holding that the ELD did not bar Below's Wis. Stat. § 100.18 claim, the court of appeals reversed the circuit court's dismissal of Below's false advertising misrepresentation claim under that statute. Accordingly, the court of appeals remanded that claim to the circuit court for trial.

¶ 16. In explaining its holding on the Wis. Stat. § 100.18 claim, the court of appeals stated:

> Below claims that the trial court erred when it dismissed her false advertising Wis. Stat. § 100.18 misrepresentation claim. We agree. In *Kailin v. Armstrong,* 2002 WI App 70, ¶ 43, 252 Wis. 2d 676, 643 N.W.2d 132, we held that "the economic loss doctrine does not apply to claims under Wis. Stat. § 100.18" and that statements to a potential buyer may constitute a statement made to "the public" for the purposes of § 100.18, *Kailin,* 252 Wis. 2d 676, ¶ 44. Thus, statements made to Below *prior* to [the] acceptance of the offer may form the basis of a false advertising claim.

*Below,* 297 Wis. 2d 781, ¶ 11 (footnote omitted). The court of appeals also stated:

> Here, Below's complaint sufficiently alleged a cause of action under Wis. Stat. § 100.18 to survive a motion

723

to dismiss. Below alleged that the Nortons made an untrue representation which caused Below to suffer a pecuniary loss. If Below can prove her allegations at trial, she may recover on the false advertising claim. Accordingly, this cause of action should not have been dismissed. We reverse that portion of the trial court's order and remand for further proceedings.

*Id.*, ¶ 13 (footnote omitted).

¶ 17. However, the court of appeals affirmed the circuit court's dismissal of all of the other claims in Below's complaint. The court of appeals held that the ELD barred the remainder of Below's tort claims, but it did not directly address and discuss the statutory claim under Wis. Stat. §§ 895.446 and 943.20(1)(d). Below filed a petition for review of the court of appeals' decision, which we granted.

II

¶ 18. This review results from the court of appeals' action in its examination of the circuit court's grant of the Nortons' motion to dismiss Below's complaint in its entirety. A motion to dismiss for failure to state a claim requires a determination of whether a complaint is legally sufficient to put forth a claim for which relief can be granted. *Watts v. Watts,* 137 Wis. 2d 506, 512, 405 N.W.2d 303 (1987). A complaint should be dismissed as being legally insufficient only if there are no conditions under which the plaintiff can recover. *Ollerman v. O'Rourke Co.,* 94 Wis. 2d 17, 24, 288 N.W.2d 95 (1980). As this court has stated, "The facts pleaded and all reasonable inferences from the pleadings are admitted to be true, but only for the purpose of testing the legal sufficiency of the claim, not for the purpose of trial." *Id.* We review a complaint's dismissal for failure to

state a claim de novo. *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 11, 270 Wis. 2d 146, 677 N.W.2d 233.

¶ 19. Whether the ELD applies to bar a claim under a given set of facts presents a question of law that is subject to our de novo review. *Linden v. Cascade Stone Co.*, 2005 WI 113, ¶ 5, 283 Wis. 2d 606, 699 N.W.2d 189.

### III

¶ 20. The principal issues upon review are whether the ELD bars common-law claims for intentional misrepresentation that occur in the context of residential, or noncommercial, real estate transactions.

¶ 21. On review, Below argues that this court should determine that the ELD does not bar common-law intentional misrepresentation claims arising from residential, or noncommercial, real estate transactions, because she claims that this court has not applied our *Kaloti* decision outside of a commercial context. Alternatively, Below argues that the *Kaloti* fraud in the inducement exception to the ELD should apply to her case. *Kaloti Enters., Inc.*, 283 Wis. 2d 555, ¶ 42. Below further asserts that consumers are in a poor position to protect themselves against fraud because, unlike commercial parties, they do not routinely purchase houses or large goods. Below argues that noncommercial purchasers should not have the burden of allocating the risk that they will be defrauded. Finally, Below contends that there are numerous attributes of such real estate transactions that render the ELD's rationale inapplicable.

¶ 22. On review, the Nortons argue that the ELD should bar common-law intentional misrepresentation

725

claims in residential, or noncommercial, real estate transactions. They contend that the court of appeals correctly applied existing case law concerning the ELD to the particular facts of the present case. The Nortons also assert that the ELD's rationale, that buyers are adequately protected by the contractual remedies that they negotiate, applies with equal force to residential, or noncommercial, real estate transactions. As a result, the Nortons argue that buyers of such real estate should consider the risk of the seller committing fraud, and the Nortons further suggest that homebuyers are in the best position to insure against such a risk.

¶ 23. For the reasons discussed in detail below, we hold that the ELD does bar common-law claims for intentional misrepresentation that occur in the context of residential, or noncommercial, real estate transactions.

¶ 24. The ELD "is a judicially created doctrine that seeks to preserve the distinction between contract and tort." *Ins. Co. of N. Am. v. Cease Elec., Inc.,* 2004 WI 139, ¶ 15, 276 Wis. 2d 361, 688 N.W.2d 462 (citation omitted). The ELD also seeks to protect " 'parties' freedom to allocate economic risk by contract . . . .' " *Kaloti Enters., Inc.,* 283 Wis. 2d 555, ¶ 28 (citation omitted). Furthermore, the ELD is meant to encourage the purchaser, who is the party best situated to assess the risk of his or her economic loss, to assume, allocate, or insure against that risk. *Id.* For the purposes of the ELD, we have defined an "economic loss" as being " 'damages resulting from inadequate value because the product is inferior and does not work for the general purposes for which it was . . . sold.' " *Id.,* ¶ 29 (citation omitted). This court also has held that a recovery for an

"economic loss" refers to a recovery that results either from a product failing in its intended use or from a product "failing to live up to a contracting party's expectations." *Id.* (citation omitted).

¶ 25. In the present case, Below's alleged damage, the house's inadequate value, is an economic loss because the house is allegedly inferior. The house is allegedly inferior because its broken sewer line prevents the house from fulfilling one of its intended uses, and also prevents the house from fulfilling one of the general purposes for which it was sold, basic sanitary needs. The contracting party, here Below, could normally[8] recover her economic loss, which resulted when the house did not live up to her expectations, through contractual remedies because of her home sales contract.

¶ 26. The case law on the ELD leads us to the result that we reach in the present case, that the ELD bars common-law claims for intentional misrepresentation that arise in the context of residential real estate transactions. This court has applied the ELD to bar both negligence and strict liability claims that arise in the context of consumer goods transactions. *See State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.,* 225 Wis. 2d

---

[8] We note, again, that Below requested, and was granted, leave to file an amended complaint, which contained a breach of contract claim. However, both the circuit court and the court of appeals did not consider the amended complaint because Below did not properly file and serve it. Below did not petition for review of the court of appeals' determination on that issue. Below may, of course, pursue her Wis. Stat. § 100.18 false advertising misrepresentation claim, because that claim was remanded to the circuit court for trial by the court of appeals, and that decision is not before us.

305, 592 N.W.2d 201 (1999). Additionally, in *Digicorp, Inc. v. Ameritech Corp.,* 2003 WI 54, ¶¶ 4, 12, 262 Wis. 2d 32, 662 N.W.2d 652, this court reaffirmed that the ELD barred a recovery for solely economic losses in intentional misrepresentation cases. Furthermore, in *Van Lare v. Vogt, Inc.,* 2004 WI 110, ¶¶ 11, 21, 274 Wis. 2d 631, 683 N.W.2d 46, though not specifically deciding whether the ELD covered "all real estate transactions," we held that the ELD can bar at least some common-law misrepresentation claims in such transactions. *Id.,* ¶ 21. Indeed, in *Van Lare,* we held that the ELD "may not be discarded simply because a transaction involves real estate." *Id.*

¶ 27. In *Kaloti,* this court decided that the ELD bars misrepresentation claims that arise in a contractual setting, unless the misrepresentation falls under a narrow fraud in the inducement exception to the ELD. *Kaloti Enters., Inc.,* 283 Wis. 2d 555, ¶ 42. For this narrow fraud in the inducement exception to apply, the misrepresentation must have induced the plaintiff to enter into the contract and must not have been specifically related to the subject matter of the contract. *Id.* Put another way, for this narrow exception to apply, the misrepresentation must be " 'extraneous to, rather than interwoven with, the contract.' " *Id.* (citation omitted).

¶ 28. Of particular relevance to our decision in the present case are this court's previous decisions in *Linden,* 283 Wis. 2d 606, and *Wickenhauser v. Lehtinen,* 2007 WI 82, 302 Wis. 2d 41, 734 N.W.2d 855. It seems clear that we decided in *Linden* that the ELD applies to residential real estate transactions.

¶ 29. In *Linden,* this court affirmed the circuit court's grant of summary judgment that dismissed, as

barred by the ELD, James and Dianne Linden's (the Lindens) negligence claims against some subcontractors who had participated in the construction of their house. *Linden*, 283 Wis. 2d 606, ¶ 1. The Lindens alleged that the subcontractors were negligent in performing work under a written construction contract. *Id.*, ¶ 3. In a context that involved residential real estate, this court held that the circuit court was correct in holding that the ELD barred the Lindens' tort claims against the subcontractors. *Id.*, ¶¶ 3, 4. Specifically, we decided that the ELD barred negligence claims in the real estate setting because we were convinced that the written contract for the construction of the Lindens' house was primarily one for goods, to which the ELD applied, and not primarily one for services. *Id.*, ¶ 22.

¶ 30. Most recently, in our decision in *Wickenhauser*, we applied the fraud in the inducement exception to the ELD in the context of a noncommercial real estate transaction. *Wickenhauser*, 302 Wis. 2d 41, ¶ 3.

¶ 31. The Wickenhausers bought 300 additional acres in 1997 for their dairy farm from Thomas Burow, and they obtained their financing from Jack Lehtinen (Lehtinen). *Id.* Lehtinen asked the Wickenhausers to sign an option contract that gave him a three-year right to buy the 300 acres for $300,000, purportedly as a security for the loans, and Lehtinen allegedly told the Wickenhausers that he would not record the option. *Id.*, ¶ 5. In contrast, Lehtinen "contended that in exchange for the $66,000 loan, together with his promise to secure an additional loan of $200,000 . . ., the Wickenhausers agreed to make Lehtinen one-half owner of the 300–acre parcel." *Id.*

¶ 32. Lehtinen filed a lawsuit (the first action) against the Wickenhausers seeking enforcement of his option, which he had recorded, to buy the 300 acres. *Id.*,

¶ 6. In their answer to the first action, the Wickenhausers asserted an affirmative defense that Lehtinen had fraudulently induced them to sign the option. *Id.*, ¶ 7. The Wickenhausers then filed a lawsuit (the second action) seeking to quiet title to the 300 acres in their names and also seeking "damages arising from the fraudulent misrepresentations Lehtinen made to induce them to sign the option." *Id.*

¶ 33. In the first action, the circuit court found for the Wickenhausers and held that they "did not agree to grant Lehtinen an ownership interest in the 300–acre parcel." *Id.*, ¶ 9. In that action, the circuit court also granted rescission of the option because: (1) it was void for lack of consideration; (2) Lehtinen had made material misrepresentations that the Wickenhausers had reasonably relied upon to their detriment; and (3) Lehtinen had acted as a dual agent when he induced the Wickenhausers into signing the option. *Id.* In the second action, the circuit court awarded the Wickenhausers both compensatory and punitive damages, and the circuit court denied Lehtinen's motion for summary judgment based on claim preclusion. *Id.*, ¶ 1.

¶ 34. This court held that the Wickenhausers had stated a claim for intentional misrepresentation against Lehtinen that was " 'extraneous to, rather than interwoven with, the contract.' " *Id.*, ¶ 41. As a result, we applied the narrow fraud in the inducement exception to the ELD, because "Lehtinen's misrepresentations were made to induce the Wickenhausers to sign the option." *Id.* We stated, "The misrepresentations did not relate to Lehtinen's performance of the contract, which was to obtain [financing for the land purchase].[9]

---

[9] Accordingly, we disagree with the dissent's statement that "[i]t is difficult to discern when, if ever, fraudulent inducement to a contract is 'extraneous to, rather than interwoven with, the

Therefore, this fraud gives rise to an independent cause of action in tort."[10] *Id.*

¶ 35. Significantly, in *Wickenhauser,* Chief Justice Abrahamson's concurrence described the majority opinion as extending the ELD by holding, for the first time, "that the economic loss doctrine is applicable to the present noncommercial real estate transaction involving at least one unsophisticated party negotiating without counsel and without a fully written, bargained-for contract." *Id.,* ¶ 68 (Abrahamson, C.J., concurring). Citing *Linden,* the majority opinion disagreed with the concurring opinion's statement that the ELD was being applied for the first time in *Wickenhauser* in a case arising out of a transaction involving residential, or noncommercial, real estate. *Id.,* ¶ 42, n.15. In doing so, the majority stated that its opinion did "not extend the economic loss doctrine into new contexts. For example, in a recent case, Linden . . ., we concluded that a contract to construct residential real estate was subject to the economic loss doctrine . . . ." *Id.* (citation omitted). As Chief Justice Abrahamson's concurrence in *Wickenhauser* indicates, the effect of the majority opinion in *Wickenhauser* was to hold that the ELD applied to noncommercial real estate transactions. *Id.,* ¶ 68 (Abrahamson, C.J., concurring).

---

contract.' " Dissent, ¶ 73. Contrary to the dissent's assertion, instead of "explaining the difficulty of how to apply the narrow exception" to the ELD, the pages of the law review article that the dissent cites simply recount this court's caselaw on that issue. *Id.*

[10] Based on the record before us, including the residential offer to purchase and the real estate condition report, we are satisfied that the contract here included the purchase of both the house and the associated land. Accordingly, any undisclosed defects with the house were interwoven with, and not extraneous to, the contract to purchase here.

¶ 36. It appears that the majority, as well as the concurrence, in *Wickenhauser* drew no distinction between the terms "residential" and "noncommercial." In the case before us, it seems unnecessary to draw such a distinction because either term fits the real estate transaction at issue here. Based on the case law cited previously, and given the discussions and the analyses in the majority opinion and the concurrence in *Wickenhauser,* we are satisfied that the ELD bars common-law intentional misrepresentation claims arising out of residential, or noncommercial, real estate transactions, such as the one in the case before us.

¶ 37. Additionally, the facts presented in the present case support our conclusion that the ELD bars common-law intentional misrepresentation claims arising out of residential, or noncommercial, real estate transactions. The record before us reflects that Below received a completed property condition report in accordance with the requirements of Wis. Stat. § 709.02. Under that statute, and also under Wis. Stat. § 709.03, the required property condition report that Below received contained a notice that she may want to obtain either professional advice or an inspection of the property. Under those statutes, the required property condition report also contained a disclaimer that the buyer, here Below, acknowledged that a professional inspector's technical knowledge may be required to detect certain defects or code violations. There is nothing in the record before us that indicates whether Below heeded this advice and hired a professional inspector before closing on the home. Regardless, if the Nortons knew about the defect with the sewer line and failed to disclose the defect, as required by these statutes, then the Nortons may very well have breached the contract's terms. As a result, in addition to her pending Wis. Stat.

§ 100.18 claim, Below might normally have been in a position to pursue a breach of contract claim against the Nortons for which contractual remedies would have been available.[11]

¶ 38. Under the protections afforded to real estate purchasers by Wis. Stat. § 709.02, purchasers are protected by contract and, thus, by contractual remedies. Accordingly, the ELD should bar common-law claims for intentional misrepresentation that arise in the context of residential, or noncommercial, real estate transactions when, as here, the damages sought are purely economic. Clearly, purchasers have adequate contractual and statutory remedies, if needed.

¶ 39. Furthermore, we do not agree with Below that the *Kaloti* fraud in the inducement exception to the ELD applies to the facts of the present case. As discussed, the *Kaloti* fraud in the inducement exception to the ELD only applies when the misrepresentation in question induced the plaintiff to enter into the contract, and that misrepresentation must be " 'extraneous to, rather than interwoven with, the contract.' " *Kaloti Enters., Inc.*, 283 Wis. 2d 555, ¶ 42 (citations omitted). This is so because only where the alleged misrepresentation did not specifically relate to the subject matter of the contract would the plaintiff be unable to protect himself or herself through contract negotiations. *See Digicorp*, 262 Wis. 2d 32, ¶ 48. In the present case, if the Nortons were aware of the broken sewer line, they

---

[11] We note again that Below requested, and was granted, leave to file an amended complaint, which contained a breach of contract claim. However, Below did not properly file and serve her amended complaint.

733

would have been obligated under Wis. Stat. § 709.02 to disclose that fact to Below. As a result, the broken sewer line does not meet the requirement for the *Kaloti* exception of being a matter that is "extraneous" to the contract's subject matter, and the *Kaloti* exception does not apply in the present case. *Kaloti Enters., Inc.,* 283 Wis. 2d 555, ¶ 42 (citation omitted).

¶ 40. In summary, for the reasons stated herein, we are satisfied that the ELD bars common-law claims for intentional misrepresentation in real estate transactions that occur in the context of residential, or noncommercial, sales.

## IV

¶ 41. We affirm the decision of the court of appeals. We hold that the ELD bars common-law claims for intentional misrepresentation in real estate transactions, whether such claims occur in the context of residential, or noncommercial, sales, such as the one in the case before us. We do not draw a distinction between the terms "residential" and "noncommercial" here, because either term fits the real estate transaction at issue.

¶ 42. Below is not left without a remedy. A purchaser of a home, as well as real estate brokers and agents, can all be assured that applying the ELD still leaves statutory and contractual remedies available where misrepresentation has occurred. We note that Below's claim under Wis. Stat. § 100.18 for false advertising was remanded by the court of appeals to the circuit court for a trial on its merits. The court of appeals' decision on that issue was not presented for our review. Section 100.18 provides a remedy for more than merely "false advertising," in that it covers fraudulent

representations made to even one prospective purchaser. *See K&S Tool & Die Corp.,* 301 Wis. 2d 109, ¶¶ 21, 23.

¶ 43. In our *K&S Tool & Die Corporation* opinion, we stated that the legislature intended Wis. Stat. § 100.18 " 'to protect the residents of Wisconsin from any untrue, deceptive, or misleading representations . . . .' " *Id.,* ¶ 21 (citation omitted). Furthermore, we reiterated that a statement that was made to only one individual could qualify for the protections afforded by § 100.18. *Id.* Clearly, a purchaser of residential or noncommercial real estate, such as Below, is protected by § 100.18 from the false representations of a home seller. If Below proves that claim, she shall recover her "pecuniary loss, together with costs, including reasonable attorney fees . . . ." *See* Wis. Stat. § 100.18(11)(b)2.

¶ 44. The issue of whether the ELD bars claims under Wis. Stat. § 895.446 for a violation of Wis. Stat. § 943.20(1)(d) also was presented for our review. However, we decline to address that issue in this opinion, and we remand that issue to the circuit court. We do so because the record of the proceedings before the circuit court is unclear as to why this claim was dismissed. Furthermore, the issue was not directly addressed and discussed by the court of appeals. We cannot determine from the record before us on review whether the circuit court dismissed that claim: (1) because it was insufficient and fatally flawed, so that a claim upon which relief could be granted was not stated; or (2) because the circuit court believed that claim was barred by the ELD. As a result, we remand that issue to the circuit court for further proceedings. Upon remand, the circuit court should clearly state that court's holding on that

statutory claim. The circuit court should review this court's recent decision in *Stuart,* 308 Wis. 2d 103, ¶ 33. That case addressed the issue of whether the statutory claim involved therein was barred by the ELD. In that case, we stated, "We are satisfied that the ELD cannot apply to statutory claims . . . ." *Id.*

*By the Court.*—The decision of the court of appeals is affirmed, and this matter is remanded to the circuit court for actions consistent with this opinion.

¶ 45. ANN WALSH BRADLEY, J. *(dissenting).* This is a case that can affect every single person who purchases a home in Wisconsin. For many citizens of this state, buying a home will be one of the most important purchases that they will make in their lifetime.

¶ 46. According to the majority, a person selling a home can look the buyer in the eye, lie about the condition of the home, and escape legal consequences in tort for the lie because of the economic loss doctrine.

¶ 47. Wisconsin has the dubious distinction of being the only state in the entire country to have expanded this judicially created doctrine in such a fashion. The majority has taken a doctrine that originally applied in a very narrow context—commercial transactions for products under warranty—and has now used it to prevent homebuyers from recovering damages in tort caused by the misrepresentations of fraudulent sellers.

¶ 48. Contrary to its protestation, the majority is not compelled to reach this unfortunate result. No legislature enacted a law compelling this conclusion. The majority is applying its own judge-made doctrine.

¶ 49. Likewise, Wisconsin case law does not compel such an outcome. The justifications for expanding

the reach of the economic loss doctrine do not apply here. Rather, the case law shows that the economic loss doctrine ought not apply to the purchase of homes by private individuals.

¶ 50. The majority downplays the reach of its decision by noting that Below may still have a remedy under Wis. Stat. § 100.18. Although Below may still have a remedy here, the majority opinion ignores cases in which victims of fraud will be remediless.

¶ 51. Rather than apply this judicially created doctrine that allows defrauding sellers to escape liability in tort, I would instead heed the advice of amicus Wisconsin Realtors Association (Realtors). They warn that the application of the economic loss doctrine here is bad for the Wisconsin real estate market and bad for Wisconsin consumers.

¶ 52. Because the majority's application of the economic loss doctrine, which protects sellers who lie about the condition of the home, is neither compelled by the law nor supported by good public policy, I respectfully dissent.

I

¶ 53. Boiled down, the majority's argument is that it is compelled to reach this result: "the case law on the [economic loss doctrine] leads us to the result" that the doctrine applies to home purchases by private individuals. Majority op., ¶ 26. It maintains that under this court's decision in *Wickenhauser v. Lehtinen,* 2007 WI 82, 302 Wis. 2d 41, 734 N.W.2d 855, the economic loss doctrine applies to transactions for all "noncommercial" real estate, including residential real estate. Majority op., ¶ 36. The majority further determines that the misrepresentation here does not fall within the narrow

fraud in the inducement exception to the economic loss doctrine adopted by this court in *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, 283 Wis. 2d 555, 699 N.W.2d 205. Majority op., ¶ 39.

¶ 54. However, the cases do not lead to the majority's result. The justifications that this court has proffered for the application of the economic loss doctrine do not apply in the context of private home buying.

¶ 55. The economic loss doctrine was first recognized by this court in *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis. 2d 910, 437 N.W.2d 213 (1989). That case involved a commercial purchaser of a product, construction equipment, that carried a manufacturer's warranty. The purchaser sued the manufacturer in tort for lost profits and repair costs when the equipment failed. *Id.* The warranty "specifically preclude[d] the recovery of such damages," and this court determined that the economic loss doctrine precluded recovery in tort. *Id.* at 921.

¶ 56. In *Daanen & Janssen v. Cedarapids, Inc.* we applied the doctrine in an action between commercial parties to bar recovery in tort for economic losses resulting from failure of a product. 216 Wis. 2d 395, 397–98, 573 N.W.2d 842 (1998). We explained that applying the economic loss doctrine to tort actions between commercial parties was based on three policies: to maintain the distinction between tort and contract law, "to protect *commercial parties'* freedom to allocate economic risk by contract," and "to encourage the party best situated to assess the risk [of] economic loss, the *commercial purchaser,* to assume, allocate, or insure against that risk." *Id.* at 403 (emphasis added).

¶ 57. This court declined to extend the doctrine to cases involving contracts for services in *Ins. Co. of N.*

*Am. v. Cease Elec. Inc.,* 2004 WI 139, 276 Wis. 2d 361, 688 N.W.2d 462. We explained that a key rationale for applying the economic loss doctrine involving contracts for products is the protection afforded under the Uniform Commercial Code (U.C.C.)[1] to manufacturers and purchasers of products. *Id.,* ¶¶ 29–36.

¶ 58. The current case, of course, involves neither a contract between commercial parties, a contract to purchase a product, a warranty, nor the protections of the U.C.C. It involves a private individual's purchase of a home. The policies underwriting the doctrine in other contexts do not support applying it to home purchases. Private individuals buying a home are not as well suited to assess and allocate the risks as commercial parties or the purchasers of products. That is especially true with respect to the risks associated with the possibility of being defrauded, a point more fully discussed below.

¶ 59. Nonetheless, the majority maintains that the economic loss doctrine applies to the residential real estate transaction here based upon this court's decisions in *Van Lare v. Vogt, Inc.,* 2004 WI 110, 274 Wis. 2d 631, 683 N.W.2d 46, *Linden v. Cascade Stone Co.,* 2005 WI 113, 283 Wis. 2d 606, 699 N.W.2d 189, and *Wickenhauser,* 302 Wis. 2d 41. All three cases are inapt.

¶ 60. In *Van Lare* we applied the economic loss doctrine to bar recovery for strict liability misrepresen-

---

[1] The Uniform Commercial Code, Wis. Stat. chs. 401–411 (2005–06) sets forth the rights and remedies that govern transactions between commercial parties of relatively equal bargaining power. *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.,* 148 Wis. 2d 910, 916, 437 N.W.2d 213 (1989). It provides a "comprehensive system for compensating consumers for economic loss arising from the purchase of defective products." *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.,* 225 Wis. 2d 305, 342, 592 N.W.2d 201 (1999).

tation in the context of a transaction for commercial real estate—a gravel pit. 274 Wis. 2d 631, ¶ 2. Our decision was premised on the fact that the case involved a "bargained-for contract for the sale of commercial-use land between two sophisticated parties represented by counsel during the negotiation process." *Id.*, ¶ 21. We emphasized that a foundational premise of the economic loss doctrine is that contract law is better suited than tort law "to deal with purely economic loss in the *commercial* arena." *Id.*, ¶ 25 (emphasis added). Accordingly, we concluded that there was no exception to the doctrine for strict liability misrepresentation "in a purely commercial setting." *Id.*, ¶ 28.

¶ 61. *Van Lare,* however, tells us nothing about whether the economic loss doctrine should apply in the current case. This case does not involve the sale of commercial-use land like a gravel pit; rather, it involves the purchase of a home. It does not involve negotiation between two sophisticated parties represented by counsel during negotiations. The transaction did not take place in a "purely commercial setting." The cause of action is fraud, not strict liability misrepresentation. In other words, this case is nothing like *Van Lare.*

¶ 62. *Linden* is similarly inapplicable. It involved a contract for the construction of a house. 283 Wis. 2d 606, ¶ 1. This court determined that a contract for the construction of a house was a contract for a product, and that the economic loss doctrine applied on that basis. *Id.*, ¶ 25. The current case does not involve a contract for the purchase of a product, it is a contract for real estate.

¶ 63. From the majority's discussion here, one would think that this court considered the contract in *Linden* to be a real estate transaction. It describes *Linden* as occurring "[i]n a context that involved resi-

dential real estate," and states that "we decided that the [economic loss doctrine] barred negligence claims in the real estate setting." Majority op., ¶ 29.

¶ 64. The implication of the majority's careful phrasing is that this court actually viewed the case as a real estate case. The language of the opinion tells a different story: *Linden* was decided on the ground that the construction contract was a contract for a product. The concept of real estate never entered the equation. The words "real estate" do not even occur in the *Linden* opinion.

¶ 65. The primary case on which the majority relies for its decision to apply the economic loss doctrine to home buying is *Wickenhauser.* The relevance of *Wickenhauser* to this case is dubious, as neither party contended that the doctrine applied to bar a cause of action. 302 Wis. 2d 41, ¶ 39. The case was instead about election of remedies. *Id.,* ¶¶ 1–2.

¶ 66. *Wickenhauser* did not even involve the purchase of a home or the purchase of residential real estate. Rather, it involved an option to sell farmland. *Id.,* ¶¶ 1, 7. It is unclear why the majority concludes that a case about a transaction involving farmland dictates the outcome of a case involving a contract for the purchase of a home.[2]

¶ 67. More importantly, the *Wickenhauser* majority was adamant that it did not extend the economic loss doctrine into contexts beyond those already estab-

---

[2] The majority notes that neither the majority nor the dissent in *Wickenhauser* distinguished between "residential" and "noncommercial" real estate. Majority op., ¶ 36. But why would they have? *Wickenhauser* did not involve residential real estate! Why does the failure to distinguish residential and noncommercial real estate in one case prevent this court from distinguishing residential real estate—a home to live in—and farmland?

lished in this state by *Linden*. *Id.*, ¶ 42 n.15. As explained above, the application of the economic loss doctrine in *Linden* was based on the determination that the contract for the construction of a house was a contract for a product. 283 Wis. 2d 606, ¶ 25.

¶ 68. We should take the *Wickenhauser* majority at its word that it did not extend the application of the economic loss doctrine any further than *Linden*. In other words, the doctrine should apply to contracts for *products* that occur "in the real estate setting." Majority op., ¶ 29; *Wickenhauser,* 302 Wis. 2d 41, ¶ 42 n. 15; *Linden,* 283 Wis. 2d 606, ¶ 25. We were explicit in *Van Lare* that a contract for real estate is not a contract for a product. 274 Wis. 2d 631, ¶ 2. Because this case involves a contract for real estate, and not a contract for a product, *Linden* and *Wickenhauser* do not require that the economic loss doctrine bar recovery in tort here.

¶ 69. None of the rationales set forth in our cases applying the economic loss doctrine extends to home purchases by private individuals. Such purchases are not made between commercial parties, a residential real estate transaction is not a contract for a product, and residential real estate transactions are protected by neither manufacturer warranties nor the U.C.C. The real estate contexts in which the doctrine has been applied have involved transactions for commercial-use land between two sophisticated parties represented by counsel during the negotiation process (as in *Van Lare*), a contract for a product (as in *Linden*), or a transaction involving farmland in which the majority adamantly denied that it extended the doctrine beyond *Linden* (as in *Wickenhauser*).

¶ 70. Thus, the majority has extended the application of this judge-made doctrine even though the cases do not compel this extension.

## II

¶ 71. The problems with the majority opinion go beyond its execution of the economic loss doctrine to include the purchase of homes by private individuals. The expansion of this doctrine is exacerbated by the majority's application of the narrow—rather than the broad—fraud in the inducement exception to the economic loss doctrine. Under the narrow exception a homebuyer's claim can be barred even when the purchase was made based on the lies of the seller.

¶ 72. As the majority observes, in *Kaloti* this court adopted a narrow exception to the application of the economic loss doctrine for fraudulent misrepresentation claims. Under this exception an action for fraudulent inducement of a contract is precluded by the economic loss doctrine if the misrepresentation is "interwoven with the quality or character of the goods for which the parties contracted or otherwise involved performance of the contract." *Kaloti,* 283 Wis. 2d 555, ¶ 31.

¶ 73. It is difficult to discern when, if ever, fraudulent inducement to a contract is "extraneous to, rather than interwoven with, the contract." Majority op., ¶ 39 (quoting *Kaloti,* 283 Wis. 2d 555, ¶ 42); *see* Ralph C. Anzivino, *The Fraud in the Inducement Exception to the Economic Loss Doctrine,* 90 Marq. L. Rev. 921, 935–36 (2007) (explaining the difficulty of how to apply the narrow exception). Beyond the obvious difficulty in the application of this test, it is simply bad public policy to bar fraudulent inducement claims. Most states recognize this.

¶ 74. The majority of states addressing the question have adopted a broad fraud exception: the economic loss doctrine does not bar claims based on fraud.[3]

---

[3] Ralph C. Anzivino, *The Fraud in the Inducement Exception*

743

Wisconsin is one of only three states that have adopted the narrow exception to the economic loss doctrine. The courts of the other two states have either not deployed or have declined to use this narrow exception to bar claims for fraudulently inducing the purchase of residential real estate.

¶ 75. The Michigan court of appeals adopted the narrow approach in *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.,* 532 N.W.2d 541 (Mich. Ct. App. 1995). The supreme court of Michigan has not yet addressed the issue, and Michigan courts have not deployed the narrow exception to bar fraudulent inducement claims in the context of residential real estate transactions.

¶ 76. The only other state supreme court nominally adopting the narrow exception to the economic loss doctrine is Florida. *HTP, Ltd. v. Lineas Aereas Costarricenses,* 685 So. 2d 1238, 1239–40 (Fla. 1996). Even so, the court in *HTP* held that a claim for fraudulent inducement constituted a tort independent from the underlying contract and, therefore, was not barred by the economic loss rule. *Id.* at 1240.

¶ 77. Additionally, Florida courts have not applied the exception as narrowly as the majority does in the present case. Relying on the reasoning of *HTP,* the Florida court of appeals has determined that in a contract for residential real estate a "fraudulent inducement claim is *not* barred by the economic loss [doctrine]." *Swope v. Dimarco,* 886 So. 2d 270, 272 (Fla. Dist. Ct. App. 2004) (emphasis added).[4] With the present case, therefore, Wisconsin obtains the dubious distinc-

*to the Economic Loss Doctrine,* 90 Marq. L. Rev. 921, 932–33 (2007).

[4] The defendants in *Swope* represented to a home buyer that the home was free of defects. However, the buyer discov-

tion of being the only state in the country that bars recovery in tort for fraudulently inducing the purchase of homes by private individuals.

¶ 78. Barring the tort claims of defrauded home-buyers is bad public policy. It is anathema to the public's interest in truth telling in matters of commerce. As the Florida supreme court aptly stated in *HTP,* the interest protected by fraud claims is the need for truth in human relationships generally, and in business rela-tionships specifically.

> [T]he interest protected by fraud is society's need for true factual statements in important human relation-ships, primarily commercial or business relationships. More specifically, the interest protected by fraud is a plaintiff's right to justifiably rely on the truth of a defendant's factual representation in a situation where an intentional lie would result in loss to the plaintiff.

*HTP,* 685 So. 2d at 1240 (internal quotation and citation omitted).[5]

---

ered defects after moving in, and brought a lawsuit alleging that the failure to disclose defects constituted fraudulent induce-ment. Applying *HTP,* the court determined that the economic loss doctrine did not bar the claim. *Swope v. Dimarco,* 886 So. 2d 270, 272 (Fla. Dist. Ct. App. 2004); *HTP, Ltd. v. Lineas Aereas Costarricenses,* 685 So. 2d 1238 (Fla. 1996).

[5] The Florida supreme court is an example of a state supreme court which once embarked upon an expansion of the economic loss doctrine beyond the doctrine's original purpose, but now is signaling the need for a retreat. In lamenting the expansion it stated "[u]nfortunately . . . our subsequent hold-ings have appeared to expand the rule beyond its principled origins and have contributed to applications of the rule . . . to situations well beyond our original intent." *Moransais v. Heath-man,* 744 So. 2d 973, 980 (Fla. 1999). *See also Indem. Ins. Co. v. Am. Aviation, Inc.,* 891 So. 2d 532, 542 (Fla. 2004) (recognizing

¶ 79. Similarly, the principles underlying the economic loss doctrine are thwarted by barring claims of the victims of fraud. The purpose of the economic loss doctrine is to preserve parties' "freedom to allocate economic risk by contract," and "to encourage the party best situated to assess the risk [of] economic loss . . . to assume, allocate, or insure against that risk." *Daanen,* 216 Wis. 2d at 403.

¶ 80. However, it is impossible for parties to allocate risks based on fraudulently induced contracts. Parties entering a contract "agree upon the rules and regulations which will govern their relationship; the risks inherent in the agreement and the likelihood of its breach. . . . [E]ach trusts the other's willingness to keep his word and honor his commitments . . . ." *Robinson Helicopter Co., Inc. v. Dana Corp.,* 102 P.3d 268, 275 (Cal. 2004). Fraud falls outside of the scope of risks assumed and allocated for in a contract.

¶ 81. Placing the burden on the *defrauded* party to assess the risk is counterproductive. The party best situated to assess the risk of fraud is the party committing the fraud, not the party that is the victim of the fraud.

¶ 82. This is particularly true in the context of the purchase of homes by private individuals. As amicus Realtors recognizes in its brief, people purchasing homes are often neither sophisticated in negotiation nor represented by counsel. The seller of a home has greater information, and the buyer relies on the seller to be truthful.

that economic loss doctrine in Florida does not bar recovery for fraudulent inducement and negligent misrepresentation claims).

## III

¶ 83. The majority downplays the consequences of its decision by noting that Below may still have a remedy under Wis. Stat. § 100.18. Majority op., ¶ 5. In doing so it ignores the cases in which there will be no remedy.

¶ 84. The facts underlying a recent court of appeals decision illustrate the problem. *See Aslani v. Country Creek Homes, Inc.,* No. 2007AP503, unpublished slip op. (Wis. Ct. App. January 29, 2008) (petition for review pending).[6] Country Creek built 52 new homes in Oak Creek, a suburb of Milwaukee, in 1996 and 1997. Prior to August 1997, the homes had been sold to the 52 plaintiffs in the case.

¶ 85. In October 2005, a home inspector hired by one of the owners discovered that water had penetrated and rotted the roof to such a degree that the inspector's foot went through the roof. The same problem was then discovered in each of the other residences. The roofs had not been properly constructed because felt paper, required to be placed under the shingles, had not been installed. The plaintiffs alleged fraudulent misrepresentation and brought suit in April 2007, asserting contract, tort, and § 100.18 causes of action. The majority's position here leaves the victims remediless.

¶ 86. Contract claims have a six-year statute of limitations. Wis. Stat. § 893.43. Claims accrue at the time of the breach, regardless of when the breach is discovered. *CLL Assocs. Ltd. P'ship v. Arrowhead Pac.*

---

[6] The *Aslani* case is discussed not for any precedential purposes but as a recent example where no remedy may exist for defrauded homebuyers. *See* Wis. Stat. (Rule) § 809.23(3). As noted above, it is currently pending before this court on a petition for review.

*Corp.,* 174 Wis. 2d 604, 609, 497 N.W.2d 115 (1993). Thus, the contract statute of limitations had expired by the time of the lawsuit.

¶ 87. Section 100.18 claims are subject to a three-year statute of repose, which accrues at the time of the violation. Wis. Stat. § 100.18(11)(b)3. This too had expired at the time of the lawsuit.

¶ 88. Tort claims are subject to a six-year statute of limitations, but in contrast to contract and § 100.18 claims, they accrue when the injury is (or should have been) discovered. Wis. Stat. § 893.52; *Hansen v. A.H. Robins, Inc.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983). The plaintiffs' tort claims would not have expired. Nonetheless, the majority's view of the economic loss doctrine bars the claims, even if their purchases were fraudulently induced.

¶ 89. The majority asserts that Below may "attempt again to file and serve an amended complaint" containing breach of contract claims. Majority op., ¶ 12. I do not opine on the likelihood of success of such an "attempt" given the procedural history of this case. That history reveals that the circuit court has previously granted a motion to amend the complaint to add a contract claim, then months later dismissed the amended complaint for failure to file and serve. The court of appeals has already affirmed the dismissal of the contract claim and Below declined to seek review of that dismissal here.

¶ 90. Despite the majority's hypothesis that Below might recover if he attempts again to file a contract claim, there remain fraud cases where tort is the only remedy. The majority bars those homeowners from recovering for latent defects hidden by sellers' deceit.

¶ 91. The court of appeals in *Aslani* recognized that the outcome was "harsh" but felt that its hands

were tied. The court suggested that the proper fix was for the legislature to change the law to allow contract claims to accrue upon discovery of breach. Because the economic loss doctrine is judge-made law, however, no legislative fix may be necessary. This court, here and now, could curb such a "harsh" result that leaves victims remediless by refusing to apply the economic loss doctrine in cases involving the purchases of homes by defrauded homebuyers.

## IV

¶ 92. The problems with the majority's approach are highlighted in the amicus brief filed by the Realtors. They argue that the economic loss doctrine should not apply to the purchase of a home, and that the doctrine is particularly unwarranted in cases involving fraudulent inducement. The Realtors express concern about the impact of this decision on the real estate market and Wisconsin consumers:

> Providing homebuyers with accurate and complete information and promoting an environment of trust and honesty are essential for fair and informed real estate contracts. The residential real estate transaction is fundamental to the real estate industry and the welfare of Wisconsin consumers seeking homeownership.

¶ 93. They're right.

¶ 94. The application of the economic loss doctrine barring recovery to homebuyers who are victims of fraud is bad for both the real estate market and the welfare of consumers. It is neither compelled by the law nor supported by good public policy. Accordingly, I respectfully dissent.

¶ 95. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice LOUIS B. BUTLER, JR. join this dissent.